## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

### Greenbelt Division

ADVANCE MAGAZINE )
PUBLISHERS INC. d/b/a THE )
CONDÉ NAST PUBLICATIONS, )
)
      Plaintiff, )
) Civil Action No._____
  v. )
)
DAVID LEACH, )
a/k/a David Moynihan, )
a/k/a Blackmask.com, )
a/k/a Smartset.com, )
a/k/a Disruptive Publishing, )
of Montgomery County, Maryland, )
)
      Defendant. )

## COMPLAINT

Now comes the plaintiff, Advance Magazine Publishers Inc. d/b/a The Condé Nast

Publications ("Advance"), and for its Complaint against the defendant, David Leach ("Leach"),

states as follows:

### Introduction

1.    This is a copyright and trademark action against an individual who has created a

business out of illegally copying and selling for profit more than 500 original, creative works

owned by Advance.

2.    Advance owns the registered copyrights, trademarks and associated rights to the

venerable pulp fiction publications "The Shadow," "Doc Savage" and "The Avenger" (referred

to collectively as the "Publications"). These works are original texts, stories and art dating back

to 1931, when they first appeared as magazines and then as radio shows. To this day, the stories,

characters and images remain an enduring part of American culture. People of all ages, even those too young to recall the original broadcasts, are familiar with the famous question and answer: "Who knows what evil lurks in the hearts of men? The Shadow knows. . . ."

3. For several years, and despite requests to desist, defendant Leach has been copying, selling and distributing these protected works to customers of his online business. Leach routinely and without permission scans the copyrighted works into electronic format and then sells both electronic and printed versions of the works to members of the public.

4. Mr. Leach is well aware that his business is illegal and that he does not own the legal rights to copy and distribute these works. He deliberately conceals the impropriety of his conduct from potential customers by, among other devices, removing the original copyright notices from the original texts and replacing them with the names of his own entities— Disruptive Publishing or Blackmask.com. He operates through at least two websites and uses aliases to avoid detection. When confronted with a cease and desist request from the owner of the rights, Leach cavalierly threatened (a) to send all the works electronically to foreign websites to frustrate efforts to protect the owner's rights and (b) to flee the United States to escape the consequences of his illegal conduct.

5. Mr. Leach's infringements are neither technical nor trivial; they are widespread and willful. He is not copying the works for the purpose of scholarly review, literary critique or parody. Mr. Leach is running a business for profit, using Advance's intellectual property as his inventory.

6. Advance seeks to protect and enforce its rights through injunctive relief prohibiting Mr. Leach's illegal conduct and preventing the continued distribution of infringing copies, and by other appropriate relief, including damages, as allowed by law.

- 2 -

## Parties

7.     Advance is incorporated, and has its principal place of business, in the State of New York. Advance does business under the name "The Condé Nast Publications" ("Condé Nast"), among others.

8.     Leach, a/k/a David Moynihan, a/k/a Disruptive Publishing, a/k/a Blackmask.com, a/k/a Smartset.com, resides at, and conducts his business from, 735 Ivy League Lane, in the City of Rockville in Montgomery County, Maryland.

## Jurisdiction and Venue

9.     This Court has exclusive jurisdiction over Counts I-V pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under Acts of Congress relating to copyrights and trademarks, including without limitation:

   a.   The Copyright Act of 1976, as amended (17 U.S.C. § 106);

   b.   The Lanham Act, as amended (15 U.S.C §§ 1114, 1125); and

   c.   The Digital Millennium Copyright Act, as amended (17 U.S.C. § 1202).

10.    This Court has supplemental jurisdiction over Count VI in that this claim is so related to the other claims in the action, which fall under the Court's original jurisdiction, that they form part of the same case and controversy.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Leach resides within the District of Maryland, and pursuant to 28 U.S.C. § 1400(a) because Leach may be found within the District of Maryland.

12.    This Court has personal jurisdiction over Leach because, among other things, Leach is a Maryland resident and may be found within the District of Maryland.

### Street & Smith's Publications

13.      Street & Smith Publishing Co. ("Street & Smith") is a predecessor in interest to Advance.

14.      Street & Smith was the original publisher of the Publications and owner of the copyrights and trademarks associated with a number of popular pulp fiction magazine series including, among others, "The Shadow," "Doc Savage" and "The Avenger."

### The Shadow

15.      Street & Smith published The Shadow stories in serial magazines between 1931 and 1949.  The stories were written for Street & Smith as works made for hire, primarily by Walter Gibson ("Gibson") under the pen name Maxwell Grant.

16.      Between 1931 and 1949, Gibson wrote 282 book-length stories that were published by Street & Smith in the magazines *The Shadow*, *The Shadow: A Detective Magazine*, *The Shadow: A Detective Monthly*, *The Shadow Detective Monthly*, *The Shadow Magazine* and *The Shadow Mystery* (referred to collectively as "*The Shadow* Publications"), featuring a heroic, crime-solving protagonist known as The Shadow who had the power to render himself invisible to others as he fought crime.  Other authors wrote additional stories featuring The Shadow that were published in *The Shadow* Publications, bringing the total number of The Shadow stories to 325 by 1949.

17.      In addition to the full length stories featuring The Shadow, *The Shadow* Publications also featured numerous short stories that fell within the mystery genre.  These short stories included stories featuring the characters Grace Culver and The Whisperer.  These additional stories also were written for Street & Smith as works made for hire.

18.     Street & Smith's successor in interest, Condé Nast, published or licensed additional stories featuring The Shadow between 1963 and 1980.

19.     Street & Smith, or its successor in interest, Condé Nast, properly registered with the United States Copyright Office (the "Copyright Office") the copyrights for each issue of *The Shadow* Publications. Later, Street & Smith, or its successors in interest, properly renewed with the Copyright Office the copyrights for each issue of *The Shadow* Publications. A complete list of the copyrighted magazines involved in this action featuring The Shadow, along with their original copyright registration dates, registration numbers, renewal dates and renewal numbers is attached as Exhibit A.

20.     Condé Nast has registered seven trademarks that incorporate THE SHADOW mark with the United States Patent & Trademark Office (the "Trademark Office"). In 1988, Condé Nast assigned the rights associated with these trademarks to its successor company, Advance. The assignment was properly recorded with the Trademark Office. Advance has renewed the registrations for the seven trademarks incorporating THE SHADOW mark as necessary. True and correct copies of the certificates of registration for the seven THE SHADOW marks are attached as Exhibit B.

21.     In 1991, Advance also registered a trademark associated with The Shadow for the phrase, "WHO KNOWS WHAT EVIL LURKS IN THE HEART OF MEN? THE SHADOW KNOWS." Advance most recently renewed the registration for that trademark in 2001. A true and correct copy of the certificate of registration for the mark is attached as Exhibit C.

22.     In addition, Advance is the owner of all common law trademarks associated with The Shadow, including without limitation: (1) THE SHADOW; (2) WHO KNOWS WHAT EVIL LURKS IN THE HEARTS OF MEN?; (3) THE SHADOW KNOWS.; and (4) THE

WEED OF CRIME BEARS BITTER FRUIT. (collectively, with the marks in ¶¶ 20–21,
referred to as "THE SHADOW Marks").

23.     Since at least as early as 1931, plaintiff or its predecessors in interest have
enjoyed substantially exclusive and continuous use of THE SHADOW Marks in magazines and
books.  In addition, since at least as early as 1963, plaintiff or its predecessors in interest have
enjoyed substantially exclusive and continuous use of THE SHADOW Marks in numerous other
media formats, including broadcasts, movies, comic books and audio recordings.  Advance has
licensed THE SHADOW Marks for use on numerous different products, and plaintiff has taken
steps to use, and/or has intended to use, THE SHADOW Marks in these and other media.
Advance has invested resources to build and maintain THE SHADOW Marks and the substantial
goodwill associated therewith.

24.     In addition, upon learning of infringing activities relating to THE SHADOW
Marks, plaintiff has used its resources and taken steps to protect its exclusive rights in such
marks.

25.     As a result of plaintiff's efforts to promote its goods, including books, radio
programs and movies, under THE SHADOW Marks, the marks have acquired, in the minds of
the public, a secondary meaning and have become distinctive and famous marks generally
recognized by the public as being associated exclusively with the goods of Advance and its
predecessors in interest.

## Doc Savage

26.    Street & Smith published book-length Doc Savage stories in serial magazines between 1933 and 1949.  The stories were written for Street & Smith as works made for hire primarily by Lester Dent ("Dent").

27.    During that period, Dent and others wrote 181 Doc Savage stories that were published by Street & Smith in *Doc Savage* and *Doc Savage Magazine* (referred to collectively as the "*Doc Savage* Publications"), all featuring the heroic adventurer Doc Savage, who traveled to foreign lands, invented modern marvels and righted wrongs throughout the world.

28.    In addition to the full length stories featuring Doc Savage, the *Doc Savage* Publications also featured numerous short stories that fell within the mystery genre, which also were written for Street & Smith as works made for hire.

29.    Street & Smith properly registered with the Copyright Office the copyrights for each issue of the *Doc Savage* Publications.  Later, Street & Smith, or its successors in interest, properly renewed with the Copyright Office the copyrights for each *Doc Savage* Publication.  A complete list of the copyrighted *Doc Savage* Publications that are involved in this action, along with their original copyright registration dates, registration numbers, renewal dates and renewal numbers is attached as Exhibit D.

30.    Condé Nast registered the stylized DOC SAVAGE mark with the Trademark Office in 1976, and later assigned that trademark to its successor company, Advance.  The assignment was properly recorded with the Trademark Office.  Advance most recently renewed the registration for the DOC SAVAGE trademark in 2005.  A true and correct copy of the certificate of registration for the mark is attached as Exhibit E.

- 7 -

31.    In addition, Advance is the owner of the common law trademarks associated with
Doc Savage, including without limitation the stylized DOC SAVAGE mark (collectively, with
the mark referred to in ¶ 30, the "DOC SAVAGE Marks").

32.    Since at least as early as 1933, plaintiff or its predecessors in interest have
enjoyed substantially exclusive and continuous use of the DOC SAVAGE Marks in magazines
and books. In addition, since at least as early as 1963, plaintiff or its predecessors in interest
have enjoyed the substantially exclusive and continuous use of the DOC SAVAGE Marks in
other media formats, including broadcasts, comic books and movies, and plaintiff has taken steps
to use, and/or has intended to use, the DOC SAVAGE Marks in these and other media. Advance
has invested resources to build and maintain the DOC SAVAGE Marks and the substantial
goodwill associated therewith.

33.    In addition, upon learning of infringing activities relating to the DOC SAVAGE
Marks, plaintiff has used its resources and taken steps to protect its exclusive rights in the DOC
SAVAGE Marks.

34.    As a result of Advance's efforts to promote its goods, including books, radio
programs and movies, under the DOC SAVAGE Marks, the marks have acquired, in the minds
of the public, a secondary meaning and have become distinctive marks generally recognized by
the public as being associated exclusively with the goods of Advance and its predecessors in
interest.

## The Avenger

35.    Street & Smith published book-length The Avenger stories in serial magazines
between 1939 and 1944. The stories were written for Street & Smith as works made for hire by
Paul Ernst under the pen name Kenneth Robeson.

- 8 -

36.    *The Avenger* magazine featured full length stories about The Avenger, a wealthy hero who had previously fallen victim to criminal wrongdoing, and who, with the help of a cadre of other characters, spent the remainder of his life seeking justice against all evil-doers. *The Avenger* magazine also included numerous short stories that fell within the mystery genre, written for Street & Smith as works made for hire by various writers.

37.    Beginning in 1942, The Avenger stories and other mystery genre short stories were printed in *Clues-Detective* magazine which was published by Street & Smith.  The Avenger also appeared as a short story in a single issue of *The Shadow Magazine*.

38.    Street & Smith properly registered with the Copyright Office the copyrights for each publication of *The Avenger* magazine and *Clues-Detective* magazine.  Later, Street & Smith, or its successors in interest, properly renewed with the Copyright Office the copyrights for each publication of *The Avenger* magazine and *Clues-Detective* magazine.  A complete list of the copyrighted *The Avenger* magazines and *Clues-Detective* magazines involved in this action, along with their original copyright registration dates, registration numbers, renewal dates and renewal numbers is attached as Exhibit F.

39.    Advance is the owner of all common law trademarks associated with The Avenger, including without limitation the THE AVENGER mark (collectively, "THE AVENGER Marks").

40.    Since at least as early as 1939, Advance or its predecessors in interest have enjoyed substantially exclusive and continuous use of THE AVENGER Marks in magazines.  In addition, since at least as early as 1963, Advance or its predecessors in interest have enjoyed substantially exclusive and continuous use of THE AVENGER Marks in other media formats, including audio recordings and broadcasts, magazines and comics, and Advance has taken steps

- 9 -

to use, and/or has intended to use, THE AVENGER Marks in other media. Advance has invested resources to build and maintain the brand name and the substantial goodwill associated therewith.

41.     In addition, upon learning of infringing activities relating to THE AVENGER Marks, Advance has invested resources and taken steps to protect its exclusive rights in THE AVENGER Marks.

42.     As a result of Advance's efforts to promote its goods under THE AVENGER Marks, the marks have acquired, in the minds of the public, a secondary meaning and have become distinctive marks generally recognized by the public as being associated exclusively with the goods of Advance and its predecessors in interest.

**Advance's Chain of Title**

43.     In or around 1961, Condé Nast acquired all of the capital stock of Street & Smith. By instrument executed on December 19, 1961, Street & Smith was merged into Condé Nast.

44.     The merger instrument specified that upon execution of the merger documents, "[Condé Nast] shall acquire and become, and be possessed of all of the estate, property, rights, privileges and Franchises of [Street & Smith.]"

45.     The merger document was filed with the Trademark Office after execution.

46.     As a result of the merger of Street & Smith into Condé Nast, Condé Nast became the owner of all of the copyrights and trademarks associated with The Shadow, Doc Savage and The Avenger. On September 22, 1988, Condé Nast merged into its parent company, Advance.

47.     Since Street & Smith's merger with Condé Nast, Condé Nast and its successor in interest, Advance, have taken appropriate steps to register additional copyrighted materials related to the Publications as well as trademarks associated with Doc Savage and The Shadow,

and have renewed all of the copyright and trademark registrations associated with the
Publications, as appropriate.

48.     As a result of its merger with Condé Nast, Advance is now the owner of properly
registered and renewed copyrights for the stories contained in *The Shadow* Publications, *Doc
Savage* Publications, *The Avenger* magazine and *Clues-Detective* magazine.

49.     As a result of its merger with Condé Nast, Advance is also the owner of all
trademarks, registered and common law, associated with The Shadow, Doc Savage and The
Avenger.

## Leach's Infringing Activities

50.     On information and belief, since as early as 1998, Leach has been the owner and
operator of Blackmask.com, Smartset.com and Disruptive Publishing.

51.     Disruptive Publishing is a trade name under which Leach has reproduced
numerous versions of copyrighted materials for distribution as eBooks, CD-ROMs and
paperback books.

52.     On information and belief, Leach, through Disruptive Publishing, uses electronic
scanning equipment to scan copyrighted works into electronic formats.

53.     On information and belief, because the scanning technology does not create
perfect copies, Leach and others proofread the scanned materials for errors, and fix any such
errors that they discover. This process is not perfect and results in reproductions of copyrighted
works that sometimes contain errors.

54.     Leach distributes his electronic reproductions in a variety of eBook formats,
including Microsoft Reader, Adobe Acrobat, Rocket eBook, Zipped format, iSilo, Mobipocket,

- 11 -

EB-1150 and Plucker. He also distributes the reproductions in HTML format through links on his websites.

55.     Leach also prepares paperback reproductions of a number of the Publications by printing copies of his electronic reproductions and having those printed materials bound in paperback form.

56.     Since at least as early as 2001, Leach has used these processes to create numerous reproductions of the Publications. Lists of Advance's Publications that are available (at the time of this filing) on Leach's websites, as well as the formats in which they are available, are attached as Exhibits G, H and I.

57.     Leach's eBooks and HTML versions are available for free download on his websites located at the URLs http://www.blackmask.com and http://www.smartset.com.

58.     Leach also sells his infringing reproductions in eBook format on CD-ROMs. An initial CD-ROM of eBooks prepared by Leach is available from his website for $19.99 per copy. A CD-ROM update that includes additional titles is available for $9.95. The initial and updated CD-ROMs include electronic reproductions of all of Advance's copyrighted material that was available for download from Leach's websites as of November 2004.

59.     In addition, Leach sells paperback copies of certain titles from the Publications on his websites and through other web-based book purveyors, including among others Amazon.com and Barnesandnoble.com, for between $8.96 and $12.21 per copy, plus shipping charges.

60.     Leach has reproduced and distributed Advance's copyrighted works that are available on his websites and for sale in paperback form without any license, authorization, permission or consent from Advance or its predecessors in interest.

61.     In addition, when Leach reproduces the Publications, he knowingly and intentionally removes or alters the copyright management information from the Publications, and replaces the copyright management information with the name of his own entities—Disruptive Publishing or Blackmask.com—without any license, authorization, permission or consent from Advance.

62.     Leach has reproduced and distributed numerous copies of the Publications knowing that the copyright management information properly identifying the copyright owner has been illegally removed or altered, and has been replaced with the name of Leach's own entities—Disruptive Publishing or Blackmask.com—without any license, authorization, permission or consent from Advance.

63.     In all instances, Leach knowingly and intentionally removed or altered the copyright management information to enable, facilitate or conceal his infringement, and Leach distributed copies of the Publications knowing that the copyright management information had been removed.

64.     In addition, through print books and eBooks, Leach has sold and distributed goods under the registered and common law trademarks of Advance.  Leach has also used Advance's registered and common law trademarks in advertising and marketing for his websites and for the infringing goods being offered on his websites.

65.     In addition, on information and belief, Leach has used, and continues to use, Advance's THE SHADOW and DOC SAVAGE trademarks in metatags on his website.  Metatags are electronic identifiers associated with websites, and internet search engines use metatag phrases to identify websites responsive to particular searches.  By using Advance's trademarks in his metatags, Leach increases the frequency with which internet search engines

- 13 -

will identify his website for users searching for information and products related to The Shadow and Doc Savage. He ensures more "hits" on his website (i.e., more customers) through this device.

66.    On information and belief, Leach also has purchased the keyword, "Doc Savage," on internet search engines including, but not limited to, the Google search engine.

67.    Leach's use of Advance's trademarks has created, and continues to create, the likelihood that the public will be confused about the source, sponsorship or affiliation of the goods of Leach and Advance, or will mistakenly believe that there is some connection between Leach and Advance.

## Leach's Copyright Infringement is Willful

68.    On information and belief, at all times when Leach has reproduced portions of Advance's copyrighted materials, Leach has known that Advance is the owner of the registered copyrights associated with the Publications.

69.    At least as early as February 2004, and probably years earlier, Leach knew that Advance was the owner of the registered copyrights covering the materials reproduced, and that Advance had been taking steps to stop infringements of those copyrights.

70.    Appropriate copyright management information identifying the true copyright owner was included in the original versions of the Publications from which Leach created his reproductions, putting Leach on notice that Advance or its predecessors were the owners of the registered copyrights in the Publications. Leach has ignored and intentionally removed or altered the copyright management information that identified Advance, or its predecessors in interest, as the owners of the copyrights for the Publications.

71. Despite being informed by Advance that he was violating its rights in the copyrights for the Publications, Leach, in a series of communications, has stated his intention to continue such violations even if Advance attempted to enforce its rights in the copyrights and trademarks relating to the Publications.

72. In addition, Leach has threatened to transfer electronic versions of the Publications to locations outside the United States and to continue running his business from such locations. In fact, Leach claims that he has done this with other copyrighted materials, including the books *The Great Gatsby* and *1984*.

73. Leach's words and actions demonstrate that his copyright infringement is willful.

## Count I
## (Copyright Infringement Under 17 U.S.C. §§ 106, 501 et seq.)

74. Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 73 of this Complaint as if set forth completely herein.

75. Advance is the owner of registered copyrights in the stories contained in *The Shadow* Publications, *Doc Savage* Publications, *The Avenger* magazine and *Clues-Detective* magazine as set forth in Exhibits A, D and F. True and correct copies of the original copyright registrations and renewals for the publications involved in this action are attached as Exhibits J, K and L.

76. Advance's exclusive copyright ownership protects the unique content, including but not limited to the text, artwork, headings and arrangements of The Shadow, Doc Savage and The Avenger stories.

77. Leach has made numerous reproductions of Advance's copyrighted works in various formats, as set forth in Exhibits G, H and I, including reproductions of the text, artwork,

headings and arrangements of stories contained in *The Shadow* Publications, *Doc Savage* Publications, *The Avenger* magazine and *Clues-Detective* magazine, in violation of Advance's ownership of the copyrights for those magazines.

78.     Leach has distributed his infringing reproductions of the Publications as paperback books to individuals who purchase such infringing reproductions from Leach's websites, as well as other websites including, among others, Amazon.com and Barnesandnoble.com.

79.     Leach has distributed his infringing reproductions in numerous eBook formats available for free download directly from his websites, as well as on CD-ROMs available for sale from his websites.

80.     Leach has committed these copyright violations willfully, as demonstrated by, among other things, the content of Leach's communications with Advance, Leach's copying of Advance's copyrighted materials in their entirety, Leach's removal of Advance's copyright management information from the materials and his replacement of Advance's copyright management information with the names of Leach's own entities—Blackmask.com or Disruptive Publishing.

81.     Advance is entitled to injunctive relief: (1) prohibiting Leach from reproducing Advance's copyrighted materials; (2) prohibiting Leach from using any and all content of Advance's copyrighted materials previously reproduced; and (3) prohibiting Leach from distributing any infringing reproductions.

82.     Advance is entitled to the deletion and destruction of all infringing reproductions that Leach has made in violation of the Copyright Act.

83.     Advance is entitled to seizure, impoundment and forfeiture of all infringing reproductions, as well as all other articles by which such infringing reproductions were made, including without limitation all scanning equipment, computer equipment and printers used in the creation of the infringing reproductions.

84.     Advance is entitled to money damages including pre-judgment and post-judgment interest, in the form of either actual or statutory damages, for Leach's reproduction, creation, sale and distribution of materials that infringe Advance's copyrights.

85.     Advance is entitled to recover the costs of this suit, reasonable attorneys' fees, and any other relief that this Court deems just and proper.

## Count II
### (Violation of Digital Millennium Copyright Act Under 17 U.S.C. § 1202)

86.     Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 85 of this Complaint as if set forth completely herein.

87.     Advance, or its predecessors in interest, have placed copyright management information, including copyright notices and warnings on all of the copyrighted materials listed in Exhibits A, D and F.

88.     Leach has intentionally removed or altered the copyright management information from Advance's copyrighted materials without its consent.

89.     Leach has distributed numerous copies of the reproductions that he created incorporating Advance's copyrighted materials, knowing that he had removed or altered Advance's copyright management information without its consent.

90.     Leach has distributed numerous copies of the reproductions that he has created incorporating Advance's copyrighted materials knowing, and having reasonable grounds to

- 17 -

know, that the reproduction of the copyrighted materials without Advance's copyright management information would enable, facilitate and conceal Leach's infringement of Advance's copyrights in the copyrighted materials.

91.     Advance is entitled to preliminary and permanent injunctive relief: (1) prohibiting Leach from removing or altering Advance's copyright information from any of Advance's copyrighted materials; and (2) prohibiting Leach from using or distributing reproductions any of Advance's copyrighted materials, from which the copyright management information has been removed or altered in any way.

92.     Advance is entitled to money damages including pre-judgment and post-judgment interest, in the form of either actual or statutory damages, for Leach's violations of the Digital Millennium Copyright Act, as amended (17 U.S.C. § 1202).

93.     Advance is entitled to the costs of this suit, reasonable attorneys' fees, and any other relief this Court deems just and proper.

94.     Advance is entitled to an order requiring the remedial destruction of Leach's infringing reproductions and derivative works from which the copyright management information has been removed or altered in any way.

## Count III
## (Infringement of Registered Trademark Under 15 U.S.C. § 1114)

95.     Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 94 of this Complaint as if set forth completely herein.

96.     This Count arises under Section 32(1)(a) and (b) of the Lanham Act (15 U.S.C. § 1114(1)(a) and (b)) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

- 18 -

97. Advance is the owner of all registered trademarks associated with The Shadow and Doc Savage.

98. Advance or its predecessors in interest have regularly renewed the trademarks associated with The Shadow and Doc Savage.

99. Since at least as early as 1931 in books and magazines, and 1963 in other formats, Advance or its predecessors in interest have enjoyed substantially exclusive and continuous use of THE SHADOW Marks and the DOC SAVAGE Marks.

100. The use by Leach of THE SHADOW Marks and the DOC SAVAGE Marks, the commencement and continuation of such use, and all of the other acts of Leach as heretofore alleged, create the likelihood that the public will be confused about the source, sponsorship or affiliation of the goods of Advance and of Leach, or will be led to mistakenly believe that there is some connection between Leach and Advance, as a result of which Advance and the public have been, and will continue to be, irreparably injured.

101. Advance is entitled to preliminary and permanent injunctive relief prohibiting Leach from selling or distributing goods under Advance's registered trademarks.

102. Advance is entitled to its actual compensatory and consequential damages suffered as a result of Leach's unlawful use of Advance's registered trademarks, as well as pre-judgment and post-judgment interest.

## Count IV
### (Trademark Infringement and Unfair Competition Under 15 U.S.C. § 1125)

103. Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 102 of this Complaint as if set forth completely herein.

104. This Count arises under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

- 19 -

105.    Advance is the common law owner of all THE SHADOW Marks, the DOC SAVAGE Marks and THE AVENGER Marks.

106.    Since at least as early as 1931 in books and magazines, and 1963 in other formats, Advance and its predecessors in interest have enjoyed the exclusive and continuous use of THE SHADOW Marks, the DOC SAVAGE Marks and THE AVENGER Marks.

107.    The use by Leach of THE SHADOW Marks, the DOC SAVAGE Marks and THE AVENGER Marks, the commencement and continuation of such use, and all of the other acts of Leach as heretofore alleged, create the likelihood that the public will be confused about the source, sponsorship or affiliation of the goods of Advance and Leach, or will be led to mistakenly believe that there is some connection between Leach and Advance, as a result of which Advance and the public have been, and will continue to be, irreparably injured.

108.    Advance is entitled to preliminary and permanent injunctive relief prohibiting Leach from selling or distributing goods under Advance's THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks.

109.    Advance is entitled to its actual compensatory and consequential damages suffered as a result of Leach's unlawful use of Advance's THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks, as well as pre-judgment and post-judgment interest.

### COUNT V
### (Dilution Under 15 U.S.C. § 1125(c))

110.    Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 109 of this Complaint as if set forth completely herein.

- 20 -

111.     As heretofore alleged, Advance's THE SHADOW Marks are famous and, as such, are subject to the protections of Section 43(c) of the Lanham Act.

112.     Leach's aforesaid acts dilute Advance's THE SHADOW Marks in that Leach's unauthorized and unlicensed use of THE SHADOW Marks has caused and will continue to cause the diminution of the value of the goodwill represented by, and of the distinctiveness of, Advance's THE SHADOW Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

113.     The aforesaid acts of Leach are greatly and irreparably damaging Advance and will continue to greatly and irreparably damage Advance unless enjoined by this Court, and Advance is without an adequate remedy at law.

114.     Advance is entitled to preliminary and permanent injunctive relief prohibiting Leach from further unauthorized and unlicensed use of Advance's THE SHADOW Marks and DOC SAVAGE Marks.

115.     Advance is entitled to its actual compensatory and consequential damages suffered as a result of the dilution of Advance's THE SHADOW Marks, as well as pre-judgment and post-judgment interest.

## COUNT VI
### (Maryland Common Law Trademark Infringement)

116.     Advance realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 115 of this Complaint as if set forth completely herein.

117.     This Count arises under the Maryland common law of trademark infringement.

118.     Advance's THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks have acquired, in the minds of the public, secondary meaning and have become distinct

- 21 -

marks denoting authenticity, care, skill, industry, reliability and high quality to the eye and mind of the public. Because of such reputation and public awareness, Advance has established valuable goodwill in connection with its THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks.

119.    By his above enumerated acts, Leach has unlawfully violated and infringed the rights of Advance in its THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks, causing Advance great and irreparable harm, and Advance is without an adequate remedy at law.

120.    Advance is entitled to preliminary and permanent injunctive relief prohibiting Leach from selling or distributing goods under Advance's THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks.

121.    Advance is entitled to its actual compensatory and consequential damages suffered as a result of Leach's unlawful use of Advance's THE SHADOW Marks, DOC SAVAGE Marks and THE AVENGER Marks, as well as pre-judgment and post-judgment interest.

## **Prayer For Relief**

WHEREFORE, Advance prays for judgment against the defendant as follows:

A.    That judgment be entered in favor of Advance against Leach on all counts of the Complaint.

B.    That preliminary and permanent injunctive relief be granted in favor of Advance: (1) prohibiting Leach from reproducing Advance's copyrighted materials; (2) prohibiting Leach from using any and all content of Advance's copyrighted materials previously reproduced; and (3) prohibiting Leach from distributing any infringing reproductions.

- 22 -

C. That preliminary and permanent injunctive relief be granted in favor of Advance: (1) prohibiting Leach from removing or altering Advance's copyright management information from the Publications; and (2) prohibiting Leach from using or distributing any of Advance's copyrighted materials from which the copyright management information has been removed or altered in any way.

D. That Advance be awarded statutory damages for each of Leach's violations of Advance's copyrights with respect to Count I or, in the alternative, that Advance be awarded actual, compensatory and consequential damages in accordance with the proof at trial.

E. That the Court enhance Advance's statutory damages for each of Leach's violations that is determined to be a willful infringement, pursuant to 17 U.S.C. § 504(c)(2).

F. That the Court order the seizure, impoundment and forfeiture of all of defendant's infringing reproductions, as well as all other articles by which defendant's infringing reproductions were made, including without limitation all scanning equipment, computer equipment and printers used in the creation or distribution of the infringing reproduction.

G. That Advance be awarded statutory damages for each of Leach's violations of the Digital Millennium Copyright Act with respect to Count II or, in the alternative, that Advance be awarded its actual, compensatory and consequential damages in accordance with the proof at trial.

H. That Advance be awarded its actual, compensatory and consequential damages in accordance with the proof at trial with respect to Counts III through VI for trademark infringement.

- 23 -

I.      That preliminary and permanent injunctive relief be awarded in favor of Advance prohibiting Leach from selling or distributing goods under Advance's registered or common law trademarks.

J.      That equitable relief be granted in favor of Advance requiring Leach: (1) permanently to delete and destroy all infringing works, reproductions and derivative works incorporating Advance's copyrighted materials; (2) permanently delete and destroy all infringing works, reproductions or derivative works incorporating Advance's copyrighted materials from which the copyright management information has been removed or altered in any way; and (3) permanently delete and destroy all materials in Leach's possession that bear any of the trademarks associated with the Publications.

K.      That Advance be awarded the costs of this suit, reasonable attorneys' fees, and any other relief that this Court deems just and proper.

Dated: February 28, 2006                         Respectfully submitted,

                                                 David E. Mills
                                                 (D. Md. Bar No. 16654)
                                                 David J. Wittenstein
                                                 W. Bradley Ney
                                                 DOW LOHNES & ALBERTSON, PLLC
                                                 1200 New Hampshire Ave., N.W.
                                                 Suite 800
                                                 Washington, DC 20036
                                                 Telephone: (202) 776-2000
                                                 Facsimile: (202) 776-2222