IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

ADVANCE MAGAZINE
  PUBLISHERS INC.                   :

    v.                              : Civil Action No. DKC 2006-0522

                                    :

DAVID LEACH

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this copyright and trademark infringement case are (1) Plaintiff's motion for partial summary judgment on count I, (2) Defendant's motion for partial summary judgment on counts III, IV, and V, (3) Defendant's motion to extend time for discovery and to extend time to file, (4) Defendant's motion to dismiss, and (5) Defendant's motion for a writ of mandamus.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Plaintiff's motion for partial summary judgment will be granted.  Defendant's motion to extend time to file will be denied as moot.  Defendant's motions for partial summary judgment, to extend time for discovery, to dismiss, and for a writ of mandamus will be denied.

**I.  Factual Background**

All facts are uncontroverted.  Plaintiff Advance Magazine Publishers, Inc., is the owner on record with the United States Copyright Office of more than 500 book-length stories, published in the 1930s and 1940s, in the pulp fiction serial magazines, *The*

*Shadow, Doc Savage,* and *The Avenger*, as well as in similarly titled magazines ("publications").[1]   (Paper 1, Exs. A, D, F; paper 8, Birenz Decl. ¶¶ 4, 5).

Defendant David Leach, d/b/a David Moynihan, d/b/a Disruptive Publishing, operates two websites, Blackmask.com and Smartset.net, through which he displays or offers for distribution electronic copies and reprints of Plaintiff's publications.  (Paper 8, Birenz Decl. ¶ 13).  Defendant operates his business by scanning literary works into electronic form and making them available to the public in a variety of formats, including MS-Reader, Adobe Acrobat, and Rocket eBook.  (Paper 5 at 4).  Defendant's customers may download advertiser-supported electronic copies of works directly from his websites, purchase by mail CD-ROMs and DVD-ROMs containing compilations of works, or purchase through online booksellers such as Amazon.com and Barnesandnoble.com, reprints of literary works made by Defendant.  Defendant began selling copies of Plaintiff's publications in 2000.  (Paper 5 at 5; paper 8 at 5-6).

Plaintiff submitted extensive exhibits documenting its chain of title to the publications, which will be summarized briefly. Between 1931 and 1949, Street & Smith published *The Shadow, Doc*

---

[1]   The number of works at issue is unclear.  The parties have described the publications as numbering "more than 500," "506," and "546" in various documents.  Any and all references to "*The Shadow*" include the publications *The Shadow: A Detective Magazine, The Shadow: A Detective Monthly, The Shadow Detective Monthly, The Shadow Magazine,* and *The Shadow Mystery*; and any and all references to "*Doc Savage*" include *Doc Savage Magazine*.  (Paper 1 at 4, 7).

*Savage*, and *The Avenger* as works for hire written by Walter Gibson (pen name Maxwell Grant), Lester Dent, and Paul Ernst (pen name Kenneth Robeson), respectively. (Paper 1 at ¶¶ 15, 26, 35; paper 8, Birenz Decl. ¶ 4). On December 19, 1961, Street & Smith merged into Condé Nast, transferring all "estate, property, rights, privileges and Franchises." (Paper 1 at ¶ 44; paper 8, Birenz Decl. ¶ 8). The merger document was filed with the United States Patent and Trademark Office. On September 22, 1988, Condé Nast merged into Plaintiff. At the time of the merger, Plaintiff acquired all rights previously owned by Condé Nast. (Paper 8, Birenz Decl. ¶¶ 8, 9). Plaintiff has registered additional copyrighted materials and trademarks related to the publications and has properly renewed all its registrations. (Paper 1, Exs. J, K, L).

## II.  Procedural Background

On February 28, 2006, Plaintiff filed a six count complaint against Defendant alleging: count I, copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 106, 501, *et seq.*, ("Copyright Act"); count II, copyright infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 1202, ("DMCA"); count III, trademark infringement under the Lanham Act, 15 U.S.C. § 1114; count IV, trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); count V, trademark dilution under

the Lanham Act, 15 U.S.C. § 1125(c); and count VI, trademark infringement under Maryland common law.  (Paper 1).

On March 22, 2006, Defendant filed an answer defending his actions by alleging that Plaintiff is not the true owner of the copyrights at issue because Defendant had acquired the rights through adverse possession.[2]  (Paper 5 at 1).  The answer also included a copy of a letter Defendant wrote to the United States Copyright Office, requesting a recordation of transfer of ownership of 506 of Plaintiff's publications based on the doctrine of adverse possession.  (Paper 5, Ex. 1).  The copyright office rejected Defendant's petition because he did not pay the proper fee.

On May 3, 2006, pursuant to the DMCA, Plaintiff sent a notice to the Internet service provider hosting Defendant's websites, PEER 1 Network, informing PEER 1 that Defendant's websites contained infringing copies of Plaintiff's publications.  The following day, PEER 1 disabled access to Defendant's websites.

On May 4, 2006, Defendant resubmitted his letter to the copyright office claiming a transfer of rights through adverse possession.  On June 28, 2006, the copyright office responded to Defendant's letter, indicating that the copyright office does not

---

[2]  In the alternative, Defendant initially contended that Plaintiff's rights to *Doc Savage* had been acquired by unclean hands, and were therefore void.  (Paper 5 at 1).  However, in deposition testimony Defendant testified that he had "dropped" the defense of unclean hands.  (Paper 20, Ex. 2).

consider the doctrine of adverse possession applicable to intellectual property.  (Paper 20, Ex. 1).

Plaintiff seeks partial summary judgment on its copyright infringement claim (count I).  (Paper 8).  Defendant seeks partial summary judgment on counts III, IV, and V.  (Paper 28).  Defendant also filed an untitled motion, (paper 34).  While it is not clear precisely what relief is sought by Paper 34, the court will construe it as a request to extend the period for discovery and to extend the time for Defendant to file a motion to dismiss.  Defendant additionally filed a separate motion to dismiss (paper 38) and a motion requesting a writ of mandamus ordering PEER 1 to restore access to the server hosting Defendant's websites for a limited period to allow Defendant to remove the content (paper 39).

## III. Motions for Summary Judgment

### A.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see*

5

*also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must

be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**B. Copyright Claim (count I)**

In its motion for partial summary judgment on count I, Plaintiff requests that the court enter a judgment of liability against Defendant for copyright infringement, with the amount of damages, costs, and attorney's fees to be determined separately. Plaintiff seeks to enjoin Defendant immediately and permanently from reproducing, displaying, or distributing any copies of Plaintiff's publications. Plaintiff further requests that the court order Defendant to provide to Plaintiff's attorney all infringing copies of its publications in his possession, custody, or control, and all publications used to make the infringing copies that are in his possession, custody, or control. (Paper 8 at 3-4).

Plaintiff contends that by scanning into electronic form, displaying, and selling or otherwise making available to the public, more than 500 of Plaintiff's publications, Defendant has infringed its copyrights in those publications under 17 U.S.C. § 501(a).

"[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways," namely, (1) to reproduce the work, (2) to prepare

7

derivative works, (3) to distribute copies of the work to the public, (4) to perform the work publicly, and (5) to display the work publicly. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984); 17 U.S.C. § 106.  The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501.  Stated at a general level, "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "A direct infringer has thus been characterized as one who trespasses into the copyright owner's exclusive domain established in § 106, subject to the limitations of §§ 107 through 118." *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (quoting *Sony*, 464 U.S. at 433) (internal quotations omitted).

### 1. Adverse Possession

Defendant asserts that his actions cannot constitute infringing activity because he has acquired the copyrights to Plaintiff's publications through the doctrine of adverse possession.  Defendant alleges that he has maintained a publicly available website for nearly 8 years, which is open and notorious, hostile to the interests of the copyright owner, continuous, and under claim of right.

8

Defendant makes a rather novel argument.  No court has decided whether the doctrine of adverse possession applies to intellectual property since the revision of the Copyright Act in 1976. Plaintiff offers two legal arguments for why this court should hold that the doctrine of adverse possession does not apply to copyright: (1) adverse possession is a common law doctrine and as such is preempted by the federal Copyright Act, and (2) adverse possession cannot constitute a transfer "by operation of law" under the Copyright Act because it is not a voluntary act.  (Paper 8 at 14-26).

### a.  Federal Preemption

Under the Supremacy Clause, a state law that interferes with or is contrary to federal law is invalid.  U.S. CONST. Art. 6, cl. 2.  Even in its traditional application to realty, the doctrine of adverse possession is strictly a state law defense and does not apply to rights created by federal law, such as Native American title to lands.  *See Catawba Indian Tribe of S.C. v. South Carolina*, 865 F.2d 1444, 1448 (4th Cir. 1989) ("[e]xcept where Congress provides otherwise, claims based on Indian title are not subject to state law defenses such as . . . adverse possession").

Defendant seeks to extend the state law doctrine of adverse possession to federal copyrights.  The United States Constitution vests Congress with the exclusive authority to regulate copyrights and patents.  U.S. CONST. Art. I, § 8, cl. 8.  Congress amended the

Copyright Act in 1976 to clarify the relationship between the Act and state law:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). "Thus, § 301(a) preempts state law claims if the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993). Application of the doctrine of adverse possession would transfer all of the original owner's rights to the adverse possessor. Therefore, the rights that would be acquired by adverse possession of a copyright would be equivalent to the rights set out in § 106 of the Copyright Act. Section 301(a) expressly preempts any state law granting equivalent rights. Thus, the state common law doctrine of adverse possession is preempted by the Copyright Act and cannot divest Plaintiff of its federal copyrights in *The Shadow, Doc Savage,* and *The Avenger*.

**b.   Adverse Possession as Transfer by Operation of Law**

In the alternative, Defendant attempts to circumvent the federal preemption issue by maneuvering within the Copyright Act to argue that there has been a transfer of Plaintiff's copyrights to him by "operation of law" through the doctrine of adverse possession.  (Paper 5, Ex. 1).  Thus, he is not asserting adverse possession as a state law doctrine, but rather asking the court to construe "operation of law" to encompass the principles of adverse possession.  This argument is also misguided.

The Copyright Act does allow the transfer of copyrights by "operation of law" as Defendant suggests.  *See* 17 U.S.C. § 201(d)(1).  However, transfers by operation of law are expressly limited to voluntary transfers, except in bankruptcy proceedings.

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, *has not previously been transferred voluntarily* by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

*Id.* § 201(e) (emphasis added).  By its nature, adverse possession requires involuntariness, or lack of consent, on the part of the original owner.[3]  Defendant's claim to have effected the transfer

---

[3] Because no federal law of adverse possession exists, the court must look to state law to interpret the elements of adverse
(continued...)

by operation of law through adverse possession amounts to a claim for an involuntary transfer of rights, which is barred by 17 U.S.C. § 201(e).

Defendant essentially contends that his conduct over time somehow estops Plaintiff from complaining about copyright infringement.  Any argument that Plaintiff's claim is time-barred must be rejected.  The limitations period for bringing a copyright infringement claim is three years after the claim accrues.  17 U.S.C. § 507(b).  A claim accrues when "one has knowledge of a violation or is chargeable with such knowledge."  *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997) (internal quotation marks and citations omitted). Because each sale or copy of a work is a separate act of infringement, a "party does not waive the right to sue for [copyright] infringements that accrue within three years of filing

---

[3](...continued)
possession.  Defendant is a citizen of and operates his business from Maryland, so the court will look to Maryland law.  The familiar elements of adverse possession are that, to be adverse, possession must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the statutory period of twenty years. *Banks v. Pusey*, 393 Md. 688, 709 (2006).  "It has long been held by [the Court of Appeals of Maryland] that where the original entry and subsequent occupancy of land was under a contract, or *with the consent or permission of the owner*, the possession would not be hostile or adverse," and thus cannot meet the requirements for adverse possession. *Banks*, 393 Md. at 710 (emphasis added).  In short, if a would-be adverse possessor has "the consent or permission of the owner" he cannot meet the hostility and adversity requirements of adverse possession.

by not asserting related claims that accrued beyond three years."
*Id.* Defendant was displaying infringing copies of Plaintiff's work
until PEER 1 disabled access to his websites, thus, the last act of
infringement occurred as recently as May, 2006.  Plaintiff's
complaint was brought within the three year statute of limitations.
Furthermore, a court may not apply the doctrine of laches to
shorten the statutory limitations period established by Congress
for claims brought under the Copyright Act, 17 U.S.C. § 507(b).
*Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798
(4th Cir. 2001).

Thus, Defendant's argument that he has acquired the copyrights
to *The Shadow, Doc Savage,* and *The Avenger* through adverse
possession fails as a matter of law.  Plaintiff has produced
uncontroverted evidence that it owns the copyrights to the
publications.

## 2.  Infringing Activity

"Section 106 of the Copyright Act confers a bundle of
exclusive rights to the owner of the copyright," including the
rights to reproduce, create derivative works, distribute, perform,
and display the copyrighted work.  *Harper & Row, Publishers, Inc.
v. Nation Enter.*, 471 U.S. 539, 546 (1985); 17 U.S.C. § 106.
Plaintiff alleges that Defendant has violated its exclusive rights
of reproduction, distribution, and display in the publications
Defendant makes available on his websites.

Plaintiff contends that Defendant violated its exclusive right to reproduce the publications by scanning into electronic form the text, original illustrations, and cover art of its publications. (Paper 8 at 13).   It is well-established that photocopying a copyrighted work without the owner's permission infringes the owner's right of reproduction. *See Princeton Univ. v. Michigan Document Svcs.*, 99 F.3d 1381 (6th Cir. 1996), *cert. denied*, 520 U.S. 1156 (1997).  Although Defendant used a scanner to create a digital copy of a work, rather than a photocopier to print a physical copy, the methods of copying are equivalent and they are both infringing.[4]   A digital copy made without the owner's permission is copyright infringement.   *See, e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (holding companies contributorily liable for copyright infringement for facilitating users' transmissions of unauthorized digital copies of copyrighted works).   Thus, Defendant has infringed Plaintiff's exclusive right to reproduce its publications.

Furthermore, Plaintiff alleges that Defendant violated its exclusive right to display its publications by making them available for the public to view as HTML pages on his websites. (Paper 8 at 13).  To infringe an owner's right to display, a person

---

[4] Although Defendant does, in fact, print and sell paper copies of Plaintiff's work, Plaintiff asserts that this violates its right to distribution rather than its right to reproduction.

must (1) display a copy of the work (2) to the public.  17 U.S.C. § 106(5).  "Display" covers any showing of a copy of the work, "either directly or by means of a film, slide, television image or any other device or process."  17 U.S.C. § 101.  To display publicly means "to transmit or otherwise communicate a . . . display of the work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."  17 U.S.C. § 101.  Displaying a copy of a work on the Internet, especially on a commercial site, falls squarely within the definition of "public display."  Defendant's posting of Plaintiff's publications on his websites infringe Plaintiff's right of display.

Finally, Plaintiff claims that Defendant violated its exclusive right to distribute its publications by making them available online as "advertiser-supported downloads . . . as well as by selling his reproductions on CD-ROM compilations, DVD-ROM compilations and print books or 'reprints.'" (Paper 8 at 13).  In a case that bears directly on this issue, the Supreme Court held that two online database companies violated six freelance authors' rights of distribution by making copies of their articles available to the databases' users without the authors' consent.  *New York Times Co., Inc. v. Tasini*, 533 U.S. 483, 488 (2001).  Defendant operates what is essentially an online database of literary works,

and by making available unauthorized copies of Plaintiff's publications, he has infringed its right to distribution.

### 3.  Requested Relief

Accordingly, Plaintiff has established as a matter of law that Defendant has infringed Plaintiff's copyrights, specifically its rights of reproduction, display, and distribution. Plaintiff requests immediate relief in the form of a permanent injunction against Defendant and mandamus ordering Defendant to surrender all of Plaintiff's publications and infringing copies of Plaintiff's publications within his possession, custody, or control. (Paper 8 at 3-4).

At this stage of litigation, the court finds it appropriate to issue a preliminary injunction against Defendant, barring him from reproducing, displaying, or distributing any copies of Plaintiff's publications, in any form or format, pending a final determination of all issues.  The scope and form of a permanent injunction will be resolved at that time.

Under 17 U.S.C. § 502(a), a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  The United States Court of Appeals for the Fourth Circuit has set out a balancing test to be considered by the court in deciding on a motion for preliminary injunction: (1) the plaintiff's likelihood of success on the merits of the underlying dispute; (2) the

possibility of irreparable harm to the plaintiff if preliminary relief is denied; (3) the harm to the defendant if an injunction is issued; and (4) the public interest.  *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).  The decision to grant or deny a preliminary injunction depends upon a "flexible interplay" among all the factors considered.  *Id.*  The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors.  *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 526 (4th Cir. 2003) (internal quotation marks omitted).

If a plaintiff establishes a prima facie claim of copyright infringement, the district court may presume that it could show both probable likelihood of success on the merits and irreparable harm, for purposes of granting a preliminary injunction.  *Serv. & Training, Inc. v. Data Gen. Corp.,*  963 F.2d 680, 690 (4th Cir. 1992).  Here, Plaintiff has gone beyond establishing a prima facie case of copyright infringement and shown actual infringement, satisfying the first two factors of the balancing test.  The third factor in the balancing test is to weigh the harm to Defendant if the injunction is issued.  Defendant cannot claim a cognizable harm in being prevented from making a profit through infringing activity, thus this factor weighs in favor of Plaintiff.  Finally, the "public interest is the interest in upholding copyright protections."  *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.,*

994 F.2d 1476, 1499 (10th Cir. 1993).  "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254-55 (3rd Cir. 1983).  The balancing test tips decidedly in Plaintiff's favor and the court will grant a preliminary injunction against Defendant that he is not to reproduce, display or distribute any copies of Plaintiff's publications in any way.

In later determining the terms of any permanent injunction, the court will consider the four factors laid out by the Supreme Court:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, --- U.S. ----, ----, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006).

Additionally, Plaintiff requests that the court impound all of Defendant's infringing copies of Plaintiff's publications, as well as the original publications used to make those infringing copies.

> (a) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies . . . claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies . . . may be reproduced.

17 U.S.C. § 503. This is a reasonable request and the court will order Defendant to provide to Plaintiff's attorney all of Plaintiff's publications, and infringing reproductions of those publications, that are in his possession, custody, or control. These items will be held by Plaintiff's attorney until a final judgment is issued in this case.

### C. Trademark Claims

Defendant moves for summary judgment on all trademark infringement claims relating to *The Shadow* and *Doc Savage*.[5] Defendant argues that because Plaintiff has abandoned the marks, it no longer has rights to the marks, and thus cannot assert a cause of action for trademark infringement.

---

[5] Plaintiff did not file a formal response to the motion. Instead, it objected to the filing of the motion as being out of time. Defendant's motion was filed well after the deadline set, and he has not been granted an extension. For that reason, as well as those set forth in the body of this Memorandum, the motion will be denied.

Under the Lanham Act, a trademark is abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Abandonment is an affirmative defense. *See United States v. Farmer*, 370 F.3d 435, 441 n. 2 (4th Cir. 2004). Thus, a party claiming that a mark has been abandoned must show "non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Emergency One, Inc. v. Am. FireEagle, Ltd.,* 228 F.3d 531, 535 (4th Cir. 2000) (quoting *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 850 (2nd Cir. 1992)). Non-use for three consecutive years alone constitutes prima facie evidence of abandonment. *See* 15 U.S.C. § 1127. Proof of three consecutive years of non-use thus creates a presumption of intent not to resume use. *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1025-26 (Fed.Cir. 1989). "Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use." *Emergency One*, 228 F.3d at 536; *see also Cerveceria Centroamericana*, 892 F.2d at 1026. The ultimate burden of proof, by a preponderance of the evidence, remains always on the party asserting abandonment. *Emergency One*, 228 F.3d at 536; *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed.Cir. 1998).

Defendant submits no evidence for his claim that Plaintiff has abandoned its marks. His one page motion merely states "[p]er Mr.

Ney's statement, the Court may safely conclude that Doc Savage was last printed by Advance in 1990, while The Shadow was last used in 1994. . . ." (Paper 28 at 1). Defendant does not make clear which statement by Plaintiff he refers to, and the court cannot find any support for his assertion on the record. The moving party in a summary judgment motion bears the burden of proving that no genuine dispute as to any material fact exists. *See* Fed.R.Civ.P. 56(c). Because Defendant has submitted no evidence that Plaintiff has abandoned the *Doc Savage* and *The Shadow* marks, his motion for partial summary judgment on counts III, IV, and V (paper 28) will be denied.

**IV. Other Motions**

   **A. Untitled Motion**

Defendant filed a "request to file motion" asking the court's permission to "A, contact the Estate of Walter Gibson with information about rights said estate might not know it holds, and B, file a motion . . . to dismiss a portion of the complaint against the Defense relating to digital reproductions." (Paper 34 at 4). Defendant asserts that the delay in filing a motion to dismiss was due to Plaintiff's fraudulent misrepresentation of its ownership. (*Id.*)

As to Part A, Defendant is free to contact whomever he wishes without leave of the court. To the extent that Defendant is asking the court to extend the period of discovery, that request will be

denied.  The scheduling order set the close of discovery for August 7, 2006.  (Paper 6).  A scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]"  Fed.R.Civ.P. 16(b).  Defendant has not shown good cause demonstrating why the court should extend the period for discovery.

Part B, the request to file a motion to dismiss, was rendered moot when Defendant subsequently filed a motion to dismiss (paper 38).

### B.  Motion to Dismiss

Defendant filed a motion pursuant to Fed.R.Civ.P. 41(b) seeking an involuntary dismissal of all of Plaintiff's claims for Plaintiff's failure to comply with court-ordered discovery.  In a paperless order on October 6, 2006, Magistrate Judge Connelly directed Plaintiff to (1) produce documents from the last six years from Plaintiff, Michael Uslan, and the Sony Corporation regarding *The Shadow*, and (2) to submit an affidavit detailing its search for all contracts between Street & Smith and Gibson from 1930-1932.  (Paper 33).  Defendant's motion, filed on October 23, 2006, contends that Plaintiff has failed to comply with the order.  The motion is premature and will be denied.  Plaintiff has not yet had time to complete its compliance.

### C.  Motion for Miscellaneous Relief

Defendant asks this court to issue a writ of mandamus compelling PEER 1 to make the servers on which Defendant's files

are stored accessible to him for 72 hours.  (Paper 39).  Access to
those servers has been disabled since Plaintiff filed a DMCA notice
with PEER 1 in May, 2006.

The court may issue a writ of mandamus "if the petitioner has
no other adequate means to obtain relief to which there is a "clear
and indisputable" right.  *Media Gen. Operations, Inc. v. Buchanan*,
417 F.3d 424, 433 (4th Cir. 2005).  "Mandamus is a drastic remedy
to be invoked only in extraordinary situations." *United States v.
Moussaoui*, 333 F.3d 509, 516 (4th Cir. 2003) (internal quotation
marks and citation omitted).  A party seeking a writ of mandamus
must demonstrate that: (1) he has a clear and indisputable right to
the relief sought; (2) the responding party has a clear duty to do
the specific act requested; (3) the act requested is an official
act or duty; (4) there are no other adequate means to attain the
relief he desires; and (5) the issuance of the writ will effect
right and justice in the circumstances. *In re Braxton*, 258 F.3d
250, 261 (4th Cir. 2001); 28 U.S.C. § 1651.

First, PEER 1 is not a party to this action.  Second, while
Defendant clearly has a strong interest in accessing the materials
which have provided the foundation of his business for several
years, he does not have an indisputable right to access them.  The
files he wishes to access include infringing copies of Plaintiff's
publications.  A more proper relief would be to allow Defendant to
access only those publications which are in the public domain or

for which he has express consent from the copyright owner to duplicate.  Third, PEER 1 does not have a clear duty to provide Defendant access to its servers.  Defendant states "Peer 1 Networks, has by policy removed the Defense's server. . . ."  This suggests that PEER 1 has a policy, known to its clients, that it may remove the client's server at its discretion.

Defendant has not demonstrated that this is an extraordinary situation justifying a writ of mandamus, even were PEER 1 a party. His request will be denied.

## V.  Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment will be granted.  Defendant's motion to extend time to file a motion to dismiss will be denied as moot. Defendant's motions for summary judgment, to extend time for discovery, to dismiss, and for a writ of mandamus will be denied. A separate Order will follow.


<u>          /s/                    </u>
DEBORAH K. CHASANOW
United States District Judge